UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEMORIAL HERMANN HOSPITAL SYSTEM, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-00828 |
| | § | |
| AETNA HEALTH INC., *et al.* | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION & ORDER**

On January 20, 2006, Plaintiff filed its original petition in Texas state court alleging common-law tort and contract claims as well as statutory claims under the Texas Insurance Code and Deceptive Trade Practices Act ("DTPA"). Briefly, plaintiff asserts that defendants breached managed care contracts between the parties and made misrepresentations in connection with the admission and treatment of defendants' plan members. On March 10, 2006, defendants removed this case on the grounds that plaintiff's claims were completely preempted by ERISA and arose under federal law. *See* Dkt. 1. Plaintiff seeks remand on the basis that none of its claims are completely preempted and thus this court lacks subject-matter jurisdiction over the action. *See* Dkt. 19. After carefully considering the arguments of counsel, the evidence of record, and the governing law, the court finds that plaintiff's motion to remand should be GRANTED.

**I. FACTUAL BACKGROUND**

The court will briefly summarize the facts as pleaded in plaintiff's original petition. Under managed care contracts with the defendants, plaintiff agreed to provide healthcare at low rates to members of the defendants' ERISA-governed plans (both HMO and PPO). Plaintiff lowered its rates for medical services in return for defendants' obligation to encourage their members to choose

plaintiff as their health care provider. Defendants also agreed to pay plaintiff's claims promptly within a reasonable time after receipt thereof, within 45 days for mailed claims and 30 days for electronic claims, as required by the Texas Insurance Code.

Once the parties consummated the agreement, defendants' insureds sought and received treatment at the plaintiff's facilities for various medical conditions. *See* Dkt. 1, Ex. A. Plaintiff confirmed with the defendants that the patients were indeed covered under the managed care contracts for treatment. The defendants' representations of coverage were made "through express, implied, ostensible, or other authorized agents or representatives of Defendants." Dkt. 1 at 13. As is customary in these situations, each insured assigned his or her right to receive benefits under the managed care plan to plaintiff, which agreed to look to defendants for payment. *See, e.g.*, Dkt. 26, Exs. B-1, C-3.

The patients were discharged, and plaintiff submitted clean claims to defendants for the payments at issue in this suit. *See* Dkt. 1 at 24. Defendants investigated these claims, but according to the plaintiff these "investigations" were a subterfuge for delays in promptly paying for services rendered. Further, even when the defendants partially paid for plaintiff's services, defendants often failed to pay the full amount due under the managed care agreements in a timely manner. Defendants have still not paid contested charges in the approximate amount of $1.2 million. Plaintiff now sues for this sum plus 18% interest, a statutory penalty under the Texas Insurance Code for failure to pay claims in a timely manner, and attorneys' fees for prosecuting this action. *See* Former TEX. INS. CODE ANN. art. 20A.18B(f)-(h) (Vernon 2002) (now codified at TEX. INS. CODE ANN. §§ 843.342-.343 & 1301.137 (Vernon Supp. 2006)).

## II. ERISA Preemption

In a removed case, the burden of demonstrating federal jurisdiction rests upon the defendants, as they are the parties urging that the action is properly before the federal tribunal. *See Shirley v. Maxicare Tex., Inc.*, 921 F.2d 565, 567 (5th Cir. 1991). If the defendants fail to carry their burden, the court must remand the action to state court. *See id.* at 568 (explaining that without subject-matter jurisdiction, the court may not enter any order except for an order of dismissal or remand); 28 U.S.C. § 1447(c). Under the removal statute "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to federal court. 28 U.S.C. § 1441(a). Federal courts are courts of limited jurisdiction, and district courts have original, federal question jurisdiction only over civil cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331.

In this case, although the petition does not explicitly state any federal causes of action, the defendants assert that one or more of the plaintiff's claims "arise under" federal law because such claims are completely preempted by ERISA § 502(a), 29 U.S.C. § 1132(a). Dkt. 1 at 2-4. Unsurprisingly, the plaintiff disagrees with this assessment. Before analyzing the merits of their claims, however, a review of ERISA's preemption principles will be instructive.

**A. Complete Preemption**

Although federal jurisdiction is generally tested by the petition's allegations, "[t]here is an exception to the well-pleaded complaint rule . . . if Congress 'so completely preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 1546 (1987)). Complete preemption arises under

the section 502 civil-enforcement provisions of ERISA when a state-law cause of action duplicates, supplements, or supplants one of the remedies provided in that section. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-08, 124 S. Ct. 2488, 2495 (2004); *Taylor*, 481 U.S. at 63-64. "Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999); *Neumann v. AT&T Commc'ns, Inc.*, 376 F.3d 773, 779 (8th Cir. 2004). "In other words, if an individual, at some point in time, could have brought his claim under [ERISA § 502], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA [§ 502]." *See Davila*, 542 U.S. at 210. Complete preemption permits removal to federal court because the cause of action "arises under" federal law. *See Giles*, 172 F.3d at 337.

**B. Conflict Preemption**

Another type of preemption, express or "conflict" preemption, arises when state-law claims are asserted that "relate to any employee benefit plan described in section 1003(a) of this title and are not exempt under section 1003(b) of this title." 29 U.S. C. § 1144(a). A state-law claim may "relate to" a benefit plan even if the state law is not specifically designed to affect such plans and the effect is only indirect. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S. Ct. 478 (1990) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S. Ct. 1549 (1987)). Once the defense of conflict preemption is raised, § 1144(a) "governs the law that will apply to the state-law claims, regardless of whether the case is brought in state or federal court." *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 277 (3d Cir. 2001). Significantly for this case, even if the court were to find that plaintiff's state law causes of action against the defendants relate to an ERISA plan within

4

the meaning of § 514(a), conflict preemption is insufficient to produce federal removal jurisdiction. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 275 n.34 (5th Cir. 2004) ("Conflict preemption does not allow removal to federal court but is an affirmative defense against claims that are not completely preempted under [ERISA § 502(a)]."). The court will, therefore, only examine the contours of plaintiff's state-law claims insofar as they relate to complete preemption.

**C. Application of Preemption Principles**

In this case, at least one of the plaintiff's claims must be completely preempted by ERISA § 502(a), 29 U.S.C. § 1132(a), for this court to have subject-matter jurisdiction over the action. *See Davila*, 542 U.S. at 207. Under *Davila*'s complete preemption analysis, federal question jurisdiction is present only if: (1) Memorial Hermann could have brought its state-law claims under section 502(a), and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at 210; *see also Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004).

### III. ANALYSIS

**A. Plaintiff's Standing to Assert an ERISA Denial of Benefits Claim**

The first question under the *Davila* complete preemption test is whether plaintiff is asserting a claim for a denial of coverage for medical care that could only have been asserted under the terms of an ERISA-regulated employee benefit plan, or whether it could have brought the claim "at some point in time" under [§ 1132(a)(1)(B)]." *Davila*, 542 U.S. at 210. Section 1132 provides in pertinent part:

> A civil action may be brought–(1) by a participant or beneficiary–. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

In the words of the *Davila* Court, "[i]f a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Id.* Also, in the Fifth Circuit, a hospital has standing to sue under § 1132(a)(1)(B) as an assignee of a participant or beneficiary in order to claim plan benefits. *See Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 891 (5th Cir. 2003) ([T]his Court, like many of our sister circuits, recognizes derivative standing which permits suits in the context of ERISA-governed employee welfare benefit plans to be brought by certain non-enumerated parties."); *Hermann Hosp. v. MEBA Med. & Ben. Plan*, 845 F.2d 1286, 1289-90 (5th Cir. 1988). Plaintiff had an assignment of benefits from defendants' patients and could sue under § 1132(a) as an assignee. Minimizing its right to bring its claim under § 1132 as an assignee, however, plaintiff repeatedly states that it only presses claims for violations of legal duties independent of ERISA. *See* Dkt. 19 at 15; Dkt. 27 at 2 ("Memorial Hermann Hospital stands in its own shoes to assert the common law and statutory torts and breach of the managed care contract claims."). The court agrees with the plaintiff.

Because of plaintiff's managed care contracts with the defendants, plaintiff has the right to assert independent causes of action regardless of its status as an assignee. Put another way, the mere fact of an assignment does not result in complete preemption of the plaintiff's claim if it asserts a cause of action outside its right to recover as an assignee. *See Tenet Healthsystem Hosps., Inc. v. Crosby Tugs, Inc.*, No. Civ.A. 04-1632, 2005 WL 1038072 *3 n.3 (E.D. La. Apr. 27, 2005) ("That [plaintiff] may, in fact, have an assignment, is not itself dispositive, if the rights at issue are those provided by a third-party agreement, rather than an ERISA plan."); *Children's Hosp. Corp. v. Kindercare Learning Ctr., Inc.*, 360 F. Supp. 2d 202, 206 (D. Mass. 2005) ("As a master of its own complaint, [plaintiff] had the right to assert independent causes of action regardless of the

6

assignment."). Accordingly, because plaintiff seeks recovery of damages through state-law claims that could not be brought under the remedial provisions of § 1132(a), it lacks standing to assert an ERISA benefits claim in this case. *Davila*, 542 U.S. at 210.

Moreover, assuming that the court determined plaintiff has standing to assert its claims under § 1132(a), complete preemption under ERISA requires both standing *and* the lack of an independent legal duty supporting a state-law claim. *See id.* A legal duty is not independent if it "derives entirely from the particular rights and obligations established by [ERISA] benefit plans." *Id.* The court will examine each of the plaintiff's causes of action under this test.

**B. Plaintiff's Claims: Derivative or Independent?**

*1. The Breach of Contract and Related Texas Insurance Code Claims*

Plaintiff alleges that defendants breached the managed care contracts by failing to make full and prompt payment of certain claims as required by Texas law. Plaintiff has repeatedly asserted that its recovery of payments due is warranted for reasons beyond the terms of the ERISA benefit plans at issue. In essence, plaintiff seeks damages measured by the charges for its discounted services to the defendants, not the full recovery it could receive on the patients' assigned benefit claims. *See Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999) ("The dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the [plaintiff], but the *amount,* or level, of payment, which depends on the terms of the provider agreements."). A participant in the ERISA plans provided by the defendants could not assert plaintiff's claims under the managed care contracts. *Id.* (finding no derivative claim when plaintiff asserts "contractual breaches, and related [torts], that their patient-assignors could not assert: the patients simply are not parties to the provider agreements between the

7

[defendants] and [plaintiff]."). The court concludes that plaintiff's rights do not derive entirely from the particular rights and obligations established by the ERISA benefit plans. The plaintiff's common-law breach of contract claim is not completely preempted under a *Davila* analysis. *See Tenet Healthsystem*, 2005 WL 1038072 at *3 (rejecting defendants' contention that plaintiff's claim for breach of a hospital services agreement was completely preempted under *Davila*).

Plaintiff also asserts related violations of the Texas Insurance Code. The prompt payment provisions in Former Article 3.70-3C, § 3A require an insurer "[not] later than the 45th day after the date that [it] receives a clean claim from a provider to make a determination of whether the claim is payable." *See* Former TEX. INS. CODE ANN. art. 3.70-3C, § 3A (Vernon 2002) (now codified at TEX. INS. CODE ANN. § 1301.103 (Vernon Supp. 2006)). Former Article 21.55 provides for certain statutory damages, including a penalty of 18 percent interest per annum, for breach of that duty. *See* Former TEX. INS. CODE ANN. art. 2155 (Vernon 2002) (now codified at TEX. INS. CODE ANN. § 1301.137 (Vernon Supp. 2006)); *see also Protective Life Ins. Co. v. Russell*, 119 S.W.3d 274, 284-85 (Tex. App.–Tyler 2003, pet denied).

Here, plaintiff's claims that defendants violated Texas's prompt pay statutes do not enforce rights protected by ERISA's civil enforcement provision. *See Davila*, 542 U.S. at 210. Texas passed these statutes to ensure prompt payment of claims by insurers to independent health care providers–not to ERISA plan participants. *Baylor Univ. Med. Ctr. v. Arkansas Blue Cross Blue Shield*, 331 F. Supp. 2d 502, 511 (N.D. Tex. 2004) ("The court will not, in the name of ERISA, insulate an insurer from liability against a third-party health care provider seeking to enforce its rights under a state statute that requires prompt payment of claims."). And while the ERISA plans may provide the factual context for these claims, the plans are peripheral to the statutory obligation

to pay plaintiff promptly for services rendered. *Id.* The plaintiff's prompt pay statutory claims are not completely preempted by ERISA. *See id.* at 512.

*2. Other Texas Insurance Code Claims and DTPA Claims*

In count two of plaintiff's original petition, plaintiff asserts additional claims for deceptive acts in the business of insurance. *See* Former TEX. INS. CODE ANN. art. 21.21, §§ 4, 16 (Vernon 2002) (now codified at TEX. INS. CODE ANN. §§ 541.051 *et seq.* (former § 4) & §§ 541.151 *et seq.* (former § 16) (Vernon Supp. 2006)); TEX. BUS. & COMM. CODE ANN. § 17.46 (Vernon 2002) (Texas Deceptive Trade Practices Act "DTPA"). Although plaintiff does not specifically reference which statements constituted misrepresentations, they appear to be limited to statements about payment of allegedly overdue invoices. These allegations are unrelated to an assignment of benefits, do not raise any rights to Plan benefits, and do not allege bad faith processing of the invoice. Accordingly, these causes of action do not derive entirely from legal duties created by ERISA and are not completely preempted under § 1132(a). *See Davila*, 542 U.S. at 210.

*3. Negligence/Intentional Tort Claims*

Lastly, the third count of plaintiff's petition alleges that defendants acted intentionally or negligently by breaching duties owed to plaintiff "separate and apart from the underlying breach of contract." *See* Dkt. 1 at 19-20. According to the plaintiff, the defendants "committed one or more of the following acts of negligence:

(1) In failing to pay the claims on a timely basis;

(2) In continuing to delay payment of the claim beyond the statutory time limitations;

(3) By intentionally misleading Plaintiff about payment expectations under the contract;

9

> (4) By wrongfully recouping payments previously made on authorized and certified admissions by withholding payment on 'other' members uncontested claims;
>
> (5) By failing to obtain the approval or authorization of Plaintiff on claims where recoupments were wrongfully taken."

*Id.* at 20.

Several Fifth Circuit opinions address preemption of similar state-law tort claims and other claims asserted by health care providers in cases removed from state court. *See Transnational Hosp. Corp. v. Blue Cross & Blue Shield of Tex.*, 164 F.3d 952, 954-55 (5th Cir. 1999) (holding that hospital's state-law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud based on the improper processing of benefits are preempted by ERISA); *Cypress Fairbanks Med. Ctr. v. Pan-Am. Life Ins. Co.*, 110 F.3d 280, 282 (5th Cir. 1997); *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 243-44 (5th Cir. 1990). Defendants rely on these cases to support their contention that at the very least plaintiff's claim for negligent claims processing is completely preempted by ERISA. *See* Dkt. 29 at 2 ("[U]nder controlling Fifth Circuit precedent, MHHS's claims for negligent claims processing are completely preempted by ERISA as a matter of law."). However, all of the cases cited by the defendants rely on conflict preemption analysis under 29 U.S.C. § 1144(a), rather than complete preemption under § 1132(a)(1)(B) and were decided before the Supreme Court's decision in *Davila*. As stated previously, conflict preemption is a defense to a state claim and does not create subject-matter jurisdiction for cases filed in federal court or removed from state court. *See, e.g., Giles*, 172 F.3d at 337; *Copling v. Container Store, Inc.*, 174 F.3d 590, 594-95 (5th Cir. 1999), *rev'd on other grounds*, *Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003) (en banc).

Because none of plaintiff's claims is completely preempted, this court has no jurisdiction to determine whether the negligence/intentional tort claims "relate to" ERISA plans and are subject to conflict preemption under § 1144(a).  In fact, for the court to make any statement or finding regarding conflict preemption in this action would be tantamount to an advisory opinion, which is strictly prohibited by the Constitution.  *See* U.S. CONST. art. III, § 2, cl. 1 (limiting the court's federal question jurisdiction to cases and controversies arising under federal law).  Thus, this court expressly declines to issue any opinion on the conflict preemption issues remaining in this action, appropriately and necessarily leaving the resolution of these issues to the state tribunal.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion to remand (Dkt. 19) is GRANTED.  Pursuant to this court's power under 28 U.S.C. § 1447(c), this case is REMANDED to the 334th Judicial District Court of Harris County, Texas.

It is so ORDERED.

Signed at Houston, Texas on June 11, 2007.

_____
Gray H. Miller
United States District Judge